ELIZA B. KING DOOLEY, Plaintiff and Appellee, *v.* JULIO ENRIQUE PANTOJA, Defendant and Appellant.

No. 8467. Argued February 16, 1943.—Decided March 25, 1943.

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellant. *Dubón & Ochoteco* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

The plaintiff herein sued for revendication of a house described in the complaint. The defendant answered alleging that he was the owner of the house by purchase from Florentino Ríos, who had bought it from José Baldrich. Baldrich, according to the defendant, bought the house from Félix Guzmán, who had bought it by private deed executed by one Collazo, agent of the plaintiff. After a trial on the merits, the district court, finding that Collazo had sold the house "without being authorized to do so", entered judgment for the plaintiff. The defendant has appealed from that judgment. Counsel for the plaintiff-appellee has not filed a brief, and did not appear at the oral argument.

The second paragraph of §1604 of our Civil Code provides, with reference to agency, that "In order to compromise, alienate, mortgage, or to execute any other act of strict ownership, an express commission is required." There was no evidence of such an "express commission" in this case. The district court was therefore apparently under the impression that the absence of such an "express commission" inexorably required it to enter judgment for the plaintiff.

But the lower court failed to examine the substantial question herein; namely, whether the plaintiff had ratified the sale of her house by Collazo, in spite of the fact that the latter had not been duly authorized to make the said sale.

The plaintiff and the present manager of her properties both testified that when Collazo was working for her, he had been in charge of her office, but that he was authorized only to collect money and to act as a broker; that the plaintiff alone made the final decision on all proposed sales; and that Collazo had no power to convey her property by private deed. On the other hand, the uncontradicted testimony of José Hernández, collector for the plaintiff, was most significant. Although called by the defendant, he testified, on cross-examination by the plaintiff, that he collected $3 as rent for the *lot*. He then testified as follows:

"Q.—Who was it who told you to stop collecting for the house that is on the lot?

A.—Mrs. Dooley.

Q.—When did she tell it to you?

A.—When she found out that Collazo had sold that house without her permission.

\* \* \* \* \* \* \*

Q.—To whom did the house belong then?

A.—To Félix Guzmán and the latter sold it to Florentino Ríos and afterwards to Mr. Pantoja."

He also testified that the original sale by Collazo on behalf of the plaintiff to Guzmán had taken place about five or six years ago.

It is true that under further questioning this witness made conflicting statements as to the exact time at which the plaintiff ordered him to cease collecting rent for the house in controversy. But he testified clearly and without contradiction that, as collector for the plaintiff, he stopped collecting rent for the house at the time of the original purported sale to Guzmán by Collazo, and has since confined himself to collecting and remitting to the plaintiff's manager only the rent for the lot on which the house is located, and that he has not collected rent for the house by virtue of specific instructions to that effect from the plaintiff herself, which he received years before the present controversy.

■■ The district court refused to admit evidence tending to show that the manner in which the alleged sale herein was consummated, including the execution of private deeds by Collazo which were replaced by public deeds signed by the plaintiff when all the instalments were paid, was the customary manner in which the properties of the plaintiff were sold. The existence of such a custom would not, of course, take the place of the "express commission" required by §1604 of the Civil Code. Nevertheless, evidence tending to show performance in the past of a series of similar acts by the agent and ratification thereof by the principal, would shed light on the problem of whether, in accordance with the alleged custom, ratification occurred in the instant case. Such evidence was therefore both competent and relevant, and the district court erred in excluding it. Cf. Restatement, Agency, §43.

However, although this error was sufficiently prejudicial to warrant reversal, if the evidence which was admitted showed conclusively that the principal herein had ratified the sale, we should proceed to enter judgment for the de-

fendant rather than to remand the case for a new trial at which the improperly excluded evidence would be admitted.

 The second paragraph of §1618 of our Civil Code provides that "A principal is liable in so far as the agent has exceeded his power, only when he ratifies the same expressly or in an implied manner." Perhaps the best method of determining that a principal has ratified the acts of an unauthorized agent is by establishing that the principal has received the benefits or fruits of the transaction in question (Restatement, Agency, §98). Collazo did not testify in this case. The only testimony on this phase of the case was that of the plaintiff, who testified that she never received the purchase price of the house from her alleged agent.

But receipt of the fruits of the transaction in question is not the only method of ratification by a principal of the unauthorized acts of his agent. If a principal chooses to conduct himself so that his acts and all the circumstances spell out an "affirmance . . . of a prior act which did not bind him but which was done, or professedly done on his account . . . the act . . . is given effect as if originally authorized by him" (Restatement, Agency, §82). Cf. *Lókpez* v. *Lókpez,* 61 P.R.R. 596, decided March 25, 1943. Provided such conduct unequivocally constitutes ratification, such a principal cannot at a much later date disown his own conduct upon a belated discovery that his agent had never turned over the fruits of the transaction. Cf. §1263, Civil Code, 1930 ed.; *Central Boca Chica* v. *Treasurer,* 54 P.R.R. 404, 14. See *Hardware Mut. Casualty Co.* v. *Lieberman,* 39 F. Supp. 243 (New Jersey, 1941).

We think the rule just outlined fits the facts of this case. The plaintiff, as we have seen, once she learned of the sale of the house on her behalf by Collazo, instructed her collector to stop collecting the rent for the house. This course of conduct continued while title and use of the house, which was also improved by some of the owners, changed hands several

times. We therefore hold that, although Collazo was not originally authorized by the plaintff to sell the house in question, the plaintiff's conduct amounted to ratification of his act in so doing. She is estopped, under the circumstances of this case, from setting up at this late date his lack of authority.

The judgment of the district court will be vacated and a new judgment dismissing the complaint, with costs, will be entered.